UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD TOMIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-1184 |
| ) | |
| CATHOLIC DIOCESE OF PEORIA, a ) | |
| Religious Corporation, ) | |
| ) | |
| Defendant. ) | |

## O R D E R

This matter is now before the Court on Defendant's Motion to Dismiss. For the reasons set forth below, the Motion [#4] is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted arise pursuant to Title VII, 42 U.S.C. 2000e, and the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621.

## BACKGROUND[1]

Plaintiff, Richard Tomic ("Tomic"), was hired by Defendant, Catholic Diocese of Peoria (the "Diocese"), in March 1996 as the Director of Music and Organist for St. Mary's Cathedral. In July 1998, he assumed the additional role of the Director of Music and Organist for the Diocese. Tomic held both of these positions until his discharge on March 25, 2003.

---

[1] Unless otherwise noted, the background is taken from allegations in Plaintiff's Complaint and presumed to be true for purposes of resolving this Motion.

From March 20, 2003, through March 25, 2003, Tomic had several discussions with the Bishop's assistant, Rev. Jason Gray regarding the scheduling of choir practices and music for the coming Holy Week and Easter. Tomic was concerned that the scheduling proposed by Rev. Gray would have a detrimental effect on the music scheduled for Easter week. During these discussions, Tomic was informed that the Diocese was hiring a new organist and choir director to "assist" him. On March 25, 2003, Tomic was abruptly terminated with no warning or opportunity to appeal and was never given a reason for his termination. At that time, he was 52 years old.

On June 11, 2004, Tomic commenced this litigation. In his Complaint, he makes essentially three claims: (1) he was the victim of unlawful age discrimination in violation of the ADEA and Title VII; (2) the Diocese breached the covenant of good faith and fair dealing implicit in his employment contract; and (3) employees of the Diocese are guilty of slander per se because they have made false statements that have interfered with his business or profession.

Defendant has now moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Tomic has filed his response, and this Order follows.

## DISCUSSION

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle her to relief. *See* Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See* Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992).

I.   Subject Matter Jurisdiction

The Diocese first argues that the Complaint should be dismissed because the First Amendment precludes civil actions that arise out of ecclesiastical controversies. Specifically, the Diocese contends that issues involving internal church governance, including ecclesiastical matters, religious beliefs, and church doctrine, are beyond a secular court's scope of review. In support of this argument, the Diocese relies on Young v. Northern Illinois Conference of United Methodist Church, 21 F.3d 184 (7th Cir. 1994), and Alicea-Hernandez v. Catholic Bishop of Chicago, 320 F.3d 698 (7th Cir. 2003).

In Alicea-Hernandez, the Seventh Circuit discussed the formation and evolution of what has come to be known as "the ministerial exception," which holds that in the context of Title VII claims brought against a church by its ministers, the "balance weighs in favor of free exercise of religion" and against the application of Title VII. 320 F.3d at 702-03, *citing* McClure v. The Salvation Army, 460 F.2d 553, 560 (5th Cir. 1972); Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164, 1168 (4th Cir. 1985).

> [T[he ministerial exception to Title VII is robust where it applies . . . . The exception precludes any inquiry whatsoever into the reasons behind a church's ministerial employment decision. The church need not, for example, proffer any religious

> justification for its decision, for the Free Exercise Clause "protects the act of a decision rather than a motivation behind it."

EEOC v. Roman Catholic Diocese of Raleigh, North Carolina, 213 F.3d 795, 802 (4th Cir. 2000). The Court of Appeals then indicated that "in determining whether an employee is considered a minister for purposes of applying this exception, we do not look to ordination but instead to the function of the position." Alicea-Hernandez, 320 F.3d at 703, *citing* Young, 21 F.3d at 186; Roman Catholic Diocese, 213 F.3d at 801. A communications manager who was a liaison between the church and the community to whom it directed its message was determined to serve a ministerial function for the church, and the Seventh Circuit found that the dismissal of her Title VII claims for lack of subject matter jurisdiction was appropriate. Alicea-Hernandez, 320 F.3d at 704.

In Roman Catholic Diocese, which was relied on by the Seventh Circuit in Alicea-Hernandez, the Fourth Circuit addressed the specific question of whether a director of music ministry and part-time music teacher at the affiliated elementary school was a ministerial employee. The court affirmed the dismissal of the employee's Title VII claims because her duties primarily "consisted of the selection, presentation, and teaching of music, which is integral to the spiritual and pastoral mission of the Catholic Church and many other religious traditions." 213 F.3d at 797. In so holding, the Fourth Circuit articulated the general rule that "if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered clergy." Id. at 801. The Fifth Circuit reached a similar conclusion in Starkman v. Evans, 198 F.3d 173, 175-76 (5th Cir. 1997), when it determined that the ministerial exception should be extended

to a lay choirmaster and director of music as "religious music plays a highly important role in the spiritual mission of the church," and the job required the plaintiff to perform ministerial functions warranting First Amendment protection.

Here, Tomic held the positions of Director of Music and Organist for the Diocese and Director of Music and Organist for St. Mary's Cathedral. As indicated by the job description for these positions, the goal of the position was to "assist the Office of Divine Worship in preparing and celebrating various diocesan liturgies." Performance responsibilities included: assisting in preparing materials, practicing and playing music before, during, and after the Masses and liturgies, recruiting and training choir members and cantors, and conducting weekly rehearsals for choirs and cantors.

Tomic attempts to distinguish himself from the communications director in Alicea-Hernandez, arguing that none of these duties involved ministerial acts and that any involvement that he had with the public or congregation was incidental. However, by focusing solely on the public relations or "message dissemination" aspect of the position analyzed in that case, he has restricted the contours of the ministerial exception in a manner not supported by case law.

As the Fourth Circuit noted in Roman Catholic Diocese:

> At the heart of this case is the undeniable fact that music is a vital means of expressing and celebrating those beliefs which a religious community holds most sacred. Music is an integral part of many different religious traditions. It serves a unique function in worship by virtue of its capacity to uplift the spirit and manifest the relationship between the individual or congregation and the Almighty. . . . Thus, inasmuch as [the plaintiff's] duties involve the expression of the church's musical tradition, it is a fallacy to denominate them as merely secular. We refuse to demote music below other liturgical forms or to sever it from its spiritual moorings. We cannot say, for example, that the reading of scripture or the reciting of prayers

>is any more integral to religious worship than the singing of hymns or the intonation of chants. Whether spoken or sung, psalms lift eyes unto the hills. It is not for us to place the oratorios of Handel, the cantatas of Bach, or the simplest of hymns beneath the reading of the sacred text from which they draw. . . . The efforts of a music minister or teacher can thus influence the spiritual and pastoral mission of the church as much as one who would lead the congregation in prayer, preach from the pulpit, or teach theology in school.

213 F.3d at 802-03. Like the choir directors/music directors in Roman Catholic Diocese and Starkman, Tomic was clearly a pivotal figure in musical life in the Diocese and at St. Mary's. He was responsible for assisting in the preparation and celebration of liturgies, assisting the parish secretary in the preparation of liturgical aids, recruiting, rehearsing and conducting the choirs, and recruiting and training cantors, "functions at the very heart of the church's musical life." Id. at 803. Given these realities, Tomic's attempt to distinguish himself from the plaintiffs in Roman Catholic Diocese and Starkman is unavailing.

The Court therefore concludes that Tomic's duties and functions in his positions as Director of Music and Organist were integral to the spiritual and pastoral mission of the Diocese, thereby falling within the contours of the ministerial exception. As such, his claims attacking the reasonableness of the Diocese's personnel decision with respect to his employment status and the circumstances of his discharge involve ecclesiastical decisions that are placed beyond the subject matter jurisdiction of the Court by the Free Exercise Clause of the First Amendment. The Diocese's Motion to Dismiss must therefore be granted in this respect.

To the extent that it could be determined that the ministerial exception does not apply to Tomic's claims for breach of contract or defamation, the Court declines to exercise supplemental jurisdiction over these pendent state-law claims pursuant to 28 U.S.C. §

1367.  Wright v. Associated Ins. Co. Inc., 29 F.3d 1244, 1250 (7th Cir. 1994), *citing* 28 U.S.C. § 1367(c)(3).  Having determined that Tomic's Title VII and ADEA claims cannot proceed in federal court, no federal claims remain, and there can be no question that the remaining state claims predominate.  After weighing the relevant factors of judicial economy, convenience, fairness, and comity, the Court finds that the balance weighs in favor of declining to exercise supplemental jurisdiction and dismisses the claims in Counts II and III without prejudice to their being refiled in state court.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss [#4] is GRANTED.  This matter is now TERMINATED.

ENTERED this 16th day of November, 2004.

                                                        s/ Michael M. Mihm
                                                             Michael M. Mihm
                                                      United States District Judge